JUDGE LINDSAY
delivered the opinion oe the court.
Hugh McDonald, deceased, late of Fayette County, Ky., provided by his last will and testament that his executor should pay off and discharge certain promissory notes “made and executed by one Hugh King, then of the city of New York, of which said city they bear date in the years 1834 and 1835.” Among said notes is one described as “payable to Waring & Underwood, for the sum of $-.”
After fully describing each note the testator continued: “All the above-named notes and the payment of them this testator hereby assumes and makes a charge upon his said estate, subject to this condition and restriction, to wit: My hereinafter named executor is to pay off and discharge the said notes only upon their being properly presented in the hands of bona fide holders, and only upon the notes themselves being presented, and not upon presentation of copies of them, nor of evidences of their loss or destruction. And I further make it a condition that the face only of said notes be paid— that is, the principal of said notes—and that no interest be paid.....The payment of said debts and their assumption is a matter of conscience with the testator, and is for peculiar reasons known only to my hereinafter named executor; and reposing trust and confidence in my hereinafter named executor, I desire that he be allowed the largest discretion in the execution of the trust confided to him; and as the name of one of the parties is now disremembered, and likewise the amounts of said notes, I desire that he shall be *586 the judge of the genuineness of the notes presented, of the right and identity of the parties presenting them, of the amounts which they respectively evidence; and I desire that he use all proper means and efforts to discover the parties holding the same, and in all things necessary to the execution of his trust be allowed the largest proper discretion; and I charge him specially not to pay any interest upon said notes.”
Dennis Mulligan was nominated as executor of this will, and upon its probate by the Fayette County Court in June, 1870, he qualified as such, and at once entered upon the discharge of his duties.
In November, 1870, Earle and wife, the last-named claiming to be a devisee under the will, instituted their action against Mulligan, seeking a settlement of his accounts and a judgment against him for the amount to which they claimed Mrs. Earle was entitled as devisee. Mulligan made his answer a cross-petition against the creditors of the testator, and also asked a settlement of the estate.
In July, 1871, Boberfc Underhill, the executor of George Underhill, deceased, filed his answer and cross-petition against McDonald’s executor, setting up the fact that as executor of George Underhill, deceased, he held the note of Hugh King for the sum of $2,537.49, bearing date August 18, 1835, due ten months after date, and payable to Waring & Underhill. He averred that this is the note mentioned by the testator as having been made payable to Waring & Underwood, and that the name Underwood was used in place of Underhill by and through mistake. He further averred that the Hugh King who made and executed the note and Hugh McDonald, the testator, were one and the same person. He asked judgment for the amount of his note, and for interest from the time it became due. He anticipated the plea of the statute of limitation, and insisted that the running of that statute had all *587 tbe while been suspended because of the existence of certain facts stated at length, and which will hereafter be noticed. He prayed further that in the event he could not recover on the note the executor be required to pay to him the amount of the principal of his debt, in obedience to the requirements of the will.
Mulligan, by his answer to this cross-petition, denied that the cross-plaintiff was the legal and bona fide holder of the note, and pleaded and relied on the lapse of time-as a bar to a recovery on the contract evidenced by it.
Without discussing the facts proved, we do not hesitate to decide that Underhill’s executor has the legal right to collect the note; that it is one of the notes referred to in the will; and that Hugh King and Hugh McDonald were one and the same person.
Hugh King in 1836 was doing business as a merchant in the states of Alabama and Georgia. About that time he converted all his property into money, and without paying or providing for the payment of his debts removed, or rather fled, to the city of New Orleans. In a short time he left that city and went to the City of Mexico. At or after leaving New Orleans he changed his name to Hugh McDonald. He finally returned from Mexico to the United States, and came to Kentucky in 1844, and in 1845 or 1846 settled in Fayette County. He married, survived his wife, and finally died in the city of Lexington in 1870, the owner of a considerable estate. . He was always known in Kentucky as Hugh McDonald.
Underhill’s executor charges, and the proof shows, that King changed his name and fled the country for the fraudulent purpose of preventing his creditors from collecting their debts; that he remained continuously absent from the state of New York, where the debt was contracted and was to be paid; that his said absence prevented the running of the *588 statute in that state; and he claims that by reasou of these facts the lapse of time presents no bar to his recovery in the courts of Kentucky. It is a sufficient answer, to this assumption that in the courts of Kentucky the statutes of this state, and not those of the state in which the debt sued on was to be paid, must control in matters relating merely to the remedy, and in no wise affecting the construction or the obligation of the contract.
But appellee claims further that King by his fraudulent change of name put it out of the power of his creditors to find him, and thereby prevented them from suing him in the courts of Kentucky until the probate of his will disclosed facts that put them upon inquiry, and led to the discovery that he was their debtor, and that for this reason the statute of this state did not commence to run against his claim until such discovery.
By section 9, article 4, chapter 63, of the Revised Statutes, it was provided that when an action mentioned in section 3 of said chapter should accrue against a citizen of this state, and he by departing therefrom, or by absconding or concealing himself, “ or by other indirect means ” should obstruct the prosecution of the action, the time of the continuance of such absence or obstruction should not be computed as any part of the period within which it might have been commenced. This section was substantially the same as the ninth section of the act of 1796 and the fourteenth section of the Virginia statute of limitations, the only difference being that the departure referred to in the Revised Statutes was a departure from the state, while by the act of 1796 and by the Virginia statute a removal from the county as well as from the state was sufficient to suspend the running of the statute.
Although the testator lived all the while in this state under the assumed name of Hugh McDonald, and thereby rendered it practically impossible for his New York creditors to find him, *589 the proof does not show that this plaintiff nor those through whom he claims title to the note were at any time after he became a citizen of this state prevented from or obstructed in the prosecution of an action against him because of -his so living under said assumed name.
The firm of Waring & Underhill failed in business and went out of existence years before the testator came to this state. The note on King ivas regarded as so utterly worthless that the party who bought out the firm assets either did not have his attention called to it, or if he did, he left it in the hands of George Underhill, the surviving partner. He swears that he did not know that it constituted part of the assets of the insolvent firm. For more than thirty years the note was lost sight of entirely, and when discovered in 1870, after Mulligan had advertised in the newspapers of the city of New York that he was authorized to pay the amount of the principal thereof, it was found in the state of Connecticut in a package of unpaid notes left by the creditors in the hands of the defunct and insolvent firm of Waring & Underhill.
The facts and circumstances in proof in the cause not only fail to show that appellee or any other holder of the note had at any time been prevented or obstructed by the fraudulent change by the testator of his name from suing and maintaining an action thereon in the courts of this state, but tend to show that no attempt was made either to find the debtor or to collect the debt after he became a citizen of Kentucky. Appellee’s failure to show that the testator obstructed the prosecution of an action against him by the “ indirect means ” of living under an assumed name leaves his cause of action outside of the plain language of the exception made in section 9, article 4, of the chapter of the Revised Statutes that fixed the time within which actions should be instituted in the courts of this state. This conclusion is not the result of a strained or technical construction of the statute. The ninth *590 section of the act of 1796 was so construed by this court in the case of Sneed v. Hall (2 A. K. Marsh. 22), and the fourteenth section of the Virginia statute received the same construction from the Supreme Court of the United States in the case of Wilson v. Koontz (7 Cranch, 205).
By the plain language of the statute it was only when the debtor, “by absconding or concealing himself or by other indirect means, obstructs the prosecution of the action” that its running was suspended. It was not so where the obstruction resulted from the debtor’s absence from the state.- It that case the time of the continuance of the absence from the state was not to be computed. In all other cases it was the time of the continuance of the obstruction that was to be deducted. This distinction, in our opinion, demonstrates the inapplicability of the cases relied on by appellee.
In construing statutes of limitation the courts have inclined to follow the literal expression of the legislative will. They can not ingraft upon them exceptions not made by the legislature, and ought not to so construe legislative exceptions as to defeat the policy of such statutes. The public good demands that controversies shall be settled before the transactions out of which they arise have faded from the memories of those who were conversant with them and their attending circumstances in the beginning. We concur with Chancellor Kent that “ it would be impolitic as well as contrary to established rule to depart from the plain meaning and literal expression of the proviso in the statute of limitations.” (Demaret v. Wynkoop, 3 Johnson’s Chancery, 139.)
Neither fraud nor mistake will be allowed to modify this rule of construction. It would be strange if fraud or mistake, from which it does not affirmatively appear that an actual injury has resulted, should be held to suspend indefinitely the running of the statute of limitations, when that statute provides in express terms that actions for relief against the *591 direct consequences of fraud or mistake shall be brought within ten years after the making of the contract or the perpetration of the fraud, regardless of when the discovery may have been made. (Revised Statutes, section 5, article 3, chapter 63.) And it would be still stranger if fraud or mistake could keep alive a mere chose in action for a period of time greater than thirty years—the period which by law cuts off the right to sue for and recover real estate, even where the claimant has been all the while laboring under a legal disability to sue. (Section 5, article 1, chapter 63.) Yet such would be the result of the doctrine or rule of construction insisted on with so much earnestness by counsel for appellee.
The statute required appellee to sue on his note within fifteen years after his cause of action first accrued. This he failed to do. He has also failed to show an actual obstruction of his right to sue in the courts of this state by the fraudulent change of name by his debtor. He has failed to bring himself within the literal expression and plain meaning of the proviso, and therefore his right of action upon the note must be held to be barred by the lapse of time.
The recognition by the testator of the existence of the debt, and the provisions made for the payment of the face of the note, will not authorize us to imply therefrom a new promise to pay the whole debt. His executor was expressly inhibited from paying any part of the accrued interest, and we must go outside of the will, and of the statements therein made to ascertain that the testator was as matter of fact the real debtor.
The judgment of the circuit court is reversed, and the cause remanded with instructions to direct the executor of McDonald to pay to the executor of Underhill an amount equal to the principal of the note sued on, with interest from the date of the filing of the latter’s answer and cross-petition.